```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
ELIAS SHEHADEH,

                              Plaintiff,

              -against-                              20 Civ. 8107 (AT)

HORIZON PHARMA USA, INC., and ABC                    ORDER
CORPORATIONS 1-5,

                              Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/14/2021_

ANALISA TORRES, District Judge:

Plaintiff, Elias Shehadeh, brings this action against Defendants, Horizon Pharma USA, Inc. ("Horizon") and five other unnamed corporations associated with Horizon, for Horizon's allegedly retaliatory termination of his employment in violation of the False Claims Act, 31 U.S.C. §3730(h), the New York False Claims Act, New York Finance Law § 191, and New York Labor Law §§ 740 and 741. Compl., ECF No. 1. Horizon moves to compel arbitration under the Federal Arbitration Act ("FAA") and stay the proceedings. For the reasons stated below, Horizon's motion is GRANTED.

## BACKGROUND

On or about November 4, 2014, Estee Ward, then a "Talent Acquisition Specialist" for Horizon, sent an email to Plaintiff containing (1) a letter (the "Offer Letter") offering him a position as a rheumatology specialist at Horizon, and (2) instructions for the onboarding process. Offer Letter, ECF Nos. 17-3, 21-2; Ward Decl. ¶ 3, ECF No. 17. The onboarding process directed Plaintiff to access an online portal on which Horizon required he read, and, in some cases, sign, a variety of agreements, policies, forms, and documents. Ward Decl. ¶¶ 6–7. In addition, Plaintiff was instructed to ink-sign some documents and return them to Horizon. Id. ¶ 8.

On November 4, 2014, Plaintiff electronically signed an arbitration agreement (the "Arbitration Agreement"), one of the onboarding documents, which obliges him and Horizon to submit to arbitration claims arising out of his employment. Ward Decl. ¶¶ 14–15; Arbitration Agreement, ECF Nos. 17-1, 21-1.[1]  The next day, Plaintiff emailed Ward an ink-signed copy of the Arbitration Agreement, dated November 4, 2014. Ward Decl. ¶ 16; ECF No. 17-2.

On November 5, 2014, Plaintiff emailed Ward an ink-signed copy of the Offer Letter, dated November 5, 2014. Offer Letter, ECF Nos. 17-3, 21-2. In addition to offering the position to Plaintiff, the Offer Letter confirms "some of the terms" of Plaintiff's employment, including start date, location, compensation, bonus, and benefits. *Id.*  It also includes a merger clause which states that, "This letter, together with the [c]onfidentiality [a]greement, sets forth the entire agreement and understanding between you and the [c]ompany relating to your employment and supersedes all prior agreements." (the "Merger Clause"). *Id.* at 3.

Plaintiff commenced his employment on November 17, 2014. Ward Decl. ¶ 19.  Five years later, on October 10, 2019, Horizon fired Plaintiff, Answer ¶ 37, ECF No. 19, allegedly in retaliation for his protesting Defendants' illegal actions, Compl. ¶ 38; Pl. Mem. at 1–2, ECF No. 20.

Plaintiff commenced this lawsuit on September 30, 2020, alleging retaliatory firing in violation of the False Claims Act, 31 U.S.C. § 3730(h), the New York False Claims Act, New York Finance Law § 191, and New York Labor Laws §§ 740 and 741.[2]  Compl. ¶¶ 38, 40–76; Pl.

---

[1] Both Plaintiff and Horizon have submitted copies of the Offer Letter and the Arbitration Agreement. ECF Nos. 17-1, 17-3, 21-1, 21-2. As these copies are identical, the Court does not distinguish between them.
[2] In addition to Horizon, Plaintiff named as Defendants "ABC Corporations 1–5", fictitious names for corporations that "were connected in some manner with [Horizon] and/or were individuals, corporations, business entities, partnerships, agents, services, representatives, co-venturers, associates, companies or other entities who engaged in the activities alleged herein and/or were in some manner responsible for the damages inflicted to Shehadeh and/or were, in some manner, related to [Horizon]." Compl. ¶ 6, ECF No. 1. These entities have not been named nor have they appeared in this action.

2

Mem. at 1–2.  On December 14, 2020, Horizon moved to compel arbitration pursuant to the Arbitration Agreement, and to stay this action pending the conclusion of the arbitration.  ECF No. 15; Def. Mem., ECF No. 16.

## DISCUSSION

I. Motion to Compel Arbitration

    A. Legal Standard

Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Where one party fails to comply with an arbitration agreement, the aggrieved party "may petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

On a motion to compel arbitration under the FAA, "courts apply a 'standard similar to that applicable for a motion for summary judgment.'"  *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).  Thus, "[a] motion to compel arbitration may be granted 'when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law.'"  *Patterson v. Raymours Furniture Co*., 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015) (quoting *Thomas v. Pub. Storage, Inc*., 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013)).

To decide a motion to compel arbitration under the FAA,

> the Court must: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of the parties' agreement; (3) if federal statutory claims are asserted, consider whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, of the claims in the case are arbitrable, determine whether to stay the balance of the proceedings pending arbitration.

*Id*. (citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)).

    B.  Agreement to Arbitrate

"The question [of] whether the parties agreed to arbitrate is governed by state law principles regarding contract formation." *Id*. at 76 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In determining whether or not a valid arbitration agreement exists, there is no presumption in favor of arbitrability. *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.* (*Goldman II*), 764 F.3d 210, 215 (2d Cir. 2014); s*ee also Applied Energetics, Inc. v. NewOak Cap. Mkts.*, *LLC*, 645 F.3d 522, 526 (2d Cir. 2011). Under New York law, the party seeking arbitration bears the burden of proving, by a preponderance of the evidence, the existence and validity of an valid arbitration agreement. *Ruiz v. New Avon LLC*, No. 18 Civ. 9033, 2019 WL 4601847, at *6 (S.D.N.Y. Sept. 22, 2019), *appeal withdrawn sub nom. Rivas v. New Avon LLC*, No. 19-3398, 2020 WL 1907545 (2d Cir. Jan. 22, 2020).

Defendant asserts that the Arbitration Agreement is a binding contract requiring arbitration. Def. Mem. at 6–9. Plaintiff does not dispute that he signed the Arbitration Agreement, nor that the Arbitration Agreement is valid on its face. Pl. Opp'n at 3; Heller Decl. ¶¶ 2, 5, ECF No. 21. Instead, he argues that the Offer Letter, which does not contain an arbitration clause, supersedes the Arbitration Agreement because he signed it one day later. Pl. Opp'n at 3. The Court disagrees.

"Under New York law, [i]t is well established that a subsequent contract regarding the same matter will supersede the prior contract." *Applied Energetics, Inc*., 645 F.3d at 526 (citation omitted). However, when considering the supersession of arbitration agreements specifically, "courts in the Second Circuit look to whether the subsequent agreement 'specifically preclude[s]' or provides 'positive assurance' that a dispute is no longer subject to

arbitration." *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.* (*Goldman I*), 922 F. Supp. 2d 435, 440 (S.D.N.Y. 2013) (quoting *Applied Energetics, Inc.*, 645 F.3d at 525), *aff'd*, 764 F.3d 210 (2d Cir. 2014); *see also Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 334 (W.D.N.Y. 2017) ("Where there is a showing of specific intent for a subsequent contract to supersede a prior agreement to arbitrate, the later contract's language controls."). This line of cases derives from two Second Circuit decisions, *Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority*, and *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, both of which considered whether a forum selection clause in a later-dated contract superseded an earlier arbitration agreement, and determined that only a mandatory forum selection clause would demonstrate specific intent to supersede. *Goldman II*, 764 F.3d at 215–16; *Applied Energetics, Inc., LLC*, 645 F.3d at 525–26. The Second Circuit has concluded, however, that a non-mandatory forum selection clause in a later contract "should be read 'as complementary'" with the earlier arbitration agreement, rather than as superseding it. *Offshore Expl. & Prod., LLC v. Morgan Stanley Priv. Bank, N.A.*, 626 F. App'x 303, 307 (2d Cir. 2015) (quoting *Goldman II*, 764 F.3d at 215); *see also Applied Energetics, Inc.*, 645 F.3d 525–26.

      Here, the Offer Letter does not demonstrate a specific intent to preclude arbitration. The cases cited by Plaintiff rely on the existence of a mandatory forum selection clause in the later-dated contract to demonstrate a specific intent to supersede the earlier contract. *See Ruiz*, 2019 WL 4601847, at *5 (concluding arbitration was not required "[b]ecause the employment agreement that Ruiz signed after she executed New Avon's [employment arbitration agreement] contains a mandatory forum selection clause . . . ."); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Oliver*, 681 Fed. App'x. 64, 65–66 (2d Cir. 2017) ("The settlement agreement here, which vested exclusive jurisdiction in the courts or agencies of New York and New York City . . .

5

displaced any agreement on the part of Merrill Lynch . . . to arbitrate Oliver's claims."); *see also Offshore Expl. & Prod.*, *LLC*, 626 F. App'x at 307 ("Here, the forum selection clause is not all-inclusive or mandatory, and it should therefore be read as complementary[.]"). By contrast, the Offer Letter does not mention forum selection, let alone specifically preclude arbitration or provide positive assurance of an intent to not to arbitrate; it and the Arbitration Agreement can easily be read as complementary. *Zendon v. Grandison Mgmt., Inc.*, No. 18 Civ. 4545, 2018 WL 6427636, at *2 (E.D.N.Y. Dec. 7, 2018).[3]

The Offer Letter's Merger Clause does not alter that conclusion. The clause reads,

> This letter, together with the [c]onfidentiality [a]greement, sets forth the entire agreement and understanding between you and the [c]ompany relating to your employment and supersedes all prior agreements.

Offer Letter at 3. Plaintiff argues that the Merger Clause indicates that the Offer Letter specifically supersedes the Arbitration Agreement as a "prior agreement." Pl. Mem. at 5, 8–9.

Although on its face this clause seems to support Plaintiff, the Second Circuit has rejected such a broad reading of merger clauses with similar language. In *Bank Julius Baer & Co. v. Waxfield Ltd.*, the Second Circuit held that a merger clause stating that the later-dated contract "supersedes all prior agreements" did not invalidate a prior arbitration agreement, even though "a literal reading of the [c]lause would lead to that result." 424 F.3d 278, 283 (2d Cir. 2005), *abrogated on other grounds by Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287 (2010). Instead, based on the textual reading of the merger clause in the context of

---

[3] The confidentiality agreement, which is specifically referenced in the Offer Letter, does include a forum selection clause. *See* Confidentiality Agreement § 7.1, ECF No. 21-3 ("I hereby expressly consent to the personal jurisdiction and venue in the state and federal courts for the county in which [Defendant's] principal place of business is located for any lawsuit filed there against me by [Defendant] arising from or related to this [a]greement."). However, this clause is non-mandatory and cabined to claims arising from that agreement. Therefore, it does not indicate an intent to supersede the Arbitration Agreement generally. *Offshore Expl. & Prod., LLC v. Morgan Stanley Priv. Bank, N.A.*, 626 F. App'x 303, 306–07 (2d Cir. 2015).

the larger contract, the Second Circuit determined that the merger clause applied only to the specific provisions in the later-dated contract.  *Id.*

District courts in this Circuit have subsequently agreed that "general merger clauses" stating that the later contract supersedes "all prior agreements" only supersede an earlier contract "to the extent that [the agreements] conflict."  *Crye Precision LLC v. Bennettsville Printing*, No. 15 Civ. 221, 2019 WL 6388636, at *5 (E.D.N.Y. Aug. 13, 2019) (alteration in original) (quoting *Bank Julius Baer & Co., Ltd.*, 424 F.3d at 283), *report and recommendation adopted*, No. 15 Civ. 221, 2019 WL 4463298 (E.D.N.Y. Sept. 18, 2019).  Therefore, when parties enter into subsequent agreements "covering the same general subject matter" but with terms that are not entirely coextensive, "[w]here there is variance in the terms of the two agreements, the earlier terms survive to the extent that they remain uncontradicted by the terms of the subsequent agreement."  *Id.* at *6; *see also Dewitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 581–82 (S.D.N.Y. 2017) ("When determining if a particular provision is superseded by a provision in a subsequent contract, courts look to (1) whether there is an integration and merger clause that explicitly indicates that the prior provision is superseded; (2) whether the two provisions have the same general purpose or address the same general rights; and (3) whether the two provisions can coexist or work in tandem." (quotation marks and citation omitted)).

For instance, in *CreditSights, Inc. v. Ciasullo*, the court determined that although an earlier contract "may in some cases have broadly associated subject matter in common [with later-dated contracts], that alone is not a sufficient basis for finding that the later agreements supersede[.]"  No. 05 Civ. 9345, 2007 WL 943352, at *6–7 (S.D.N.Y. Mar. 29, 2007).  The court rejected defendant's argument that a merger clause in a later agreement, which stated that it "supersedes all prior arrangements or discussions relating to [defendant's] employment with the

7

[c]ompany or termination thereof," indicated that the later agreement superseded the earlier; "it was not enough that both contracts related to the subject of employment benefits generally," and the later contract had "no terms which correlate" to the earlier contract. *Id.* at *8; *see also Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 474 (S.D.N.Y. 2020); *Eisen*, 244 F. Supp. 3d at 334 ("Where a later contract includes only that general language in its merger clause, the clause does not terminate a requirement to arbitrate issues that arose under a prior agreement.").

These cases are different from those where the first agreement explicitly contemplated a second, forthcoming agreement to supersede it, or where the two contracts had clearly contradictory terms. *See, e.g.*, *Applied Energetics, Inc.*, 645 F.3d at 523 (holding that a later contract superseded an earlier arbitration agreement where there was a mandatory forum selection clause and the earlier contract, an engagement agreement, "specifically contemplated that the parties would enter into a subsequent, more formal agreement setting forth the terms and conditions contained [in the engagement agreement] as well as those customarily contained in agreements of such character" (quotation marks omitted)); *Eisen*, 244 F. Supp. 3d at 334 (noting the overlap in terms of a contract to determine that the latter contract superseded); *Dewitt Stern Grp., Inc.*, 257 F. Supp. 3d at 582 (concluding a later agreement superseded where there was an integration clause, the agreements both addressed the employee's employment conditions, and the agreements "contain[ed] the same subjects, like compensation, termination, and indemnification").

Here, as in *Bank Julius*, the text of the Offer Letter indicates that it does not supersede the Arbitration Agreement, despite the Merger Clause. The Offer Letter states that it sets forth "*some* of the terms of your employment," therefore clearly contemplating other contracts

8

regarding Plaintiff's employment. Offer Letter at 1 (emphasis added). These terms include compensation and benefits, but not dispute resolution; the Arbitration Agreement addresses only dispute resolution. As in *CreditSights*, although the general subject matter of the Offer Letter and the Arbitration Agreement overlap, the terms do not conflict. *CreditSights*, 2007 WL 943352, at *6–8; *see also Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 793 (S.D.N.Y. 2008) ("[T]here are certain terms in the [earlier contract] that are not covered in, and are therefore not superseded by, the [later contract]"); *Gadelkareem v. Blackbook Capital, LLC*, 13 N.Y.S.3d 850, 850 (N.Y. App. Div. 2015) (holding, where a subsequent agreement did not expressly deny the agreement to arbitrate, "since the agreement to arbitrate does not vary or contradict the provisions of the subsequent employment agreement, the merger clause set forth in the employment agreement cannot be read as expressing an intent to revoke retroactively the parties' arbitration agreement.").

Moreover, the Arbitration Agreement specifies that the consideration given to Plaintiff in exchange for his agreement to arbitrate is Defendant's agreement to "1) utilize binding arbitration for any claims against [Plaintiff] (e.g., theft, embezzlement, restitution, other willful misconduct, etc.); and 2) pay arbitration filing fees and arbitrator's fees as specified below." Arbitration Agreement at 1. Although the Offer Letter does not specify its consideration, it is implicitly Plaintiff's work for Defendant. *See* Offer Letter. The distinct consideration with respect to each agreement evidences the separate purpose of the contracts. *See CreditSights*, 2007 WL 943352, at *7 (noting the rights and obligations contained in the earlier contract were not covered in the later contracts).

Therefore, the Merger Clause's general language does not indicate specific intent for the Offer Letter's lack of forum selection clause to supersede the Arbitration Agreement. *See, e.g.*,

9

*Jampol v. Blink Holdings, Inc.*, No. 20 Civ. 2760, 2020 WL 7774400, at *6–7 (S.D.N.Y. Dec. 30, 2020).

Nor, contrary to Plaintiff's argument, does the parol evidence rule exclude the Arbitration Agreement from evidence. Under New York law, where a written agreement includes a merger clause, the effect is to require full application of the parol evidence rule "in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing." *Primex Int'l Corp. v. Wal–Mart Stores, Inc.*, 679 N.E.2d 624, 627 (N.Y. 1997). Plaintiff argues that the Arbitration Agreement is extrinsic evidence brought in to alter the terms of the Offer Letter. Pl. Mem. at 5–6. However, the Second Circuit in *Bank Julius* considered an analogous argument to Plaintiff's, and concluded that because the later-dated contract, which contained the merger clause, did not "destroy the earlier agreement to arbitrate," "enforcement of the parties' obligations to arbitrate disputes . . . does not implicate the parol evidence rule in connection with the [later-dated contract] and, hence, is not precluded by the merger clause in that writing." 424 F.3d at 283; *see also Primex Int'l Corp.*, 679 N.E.2d at 627 ("The fact that this other contract relates to what is, in important aspects, the same transaction, does not extend this [merger] paragraph to the destruction of that other contract. Its effect is limited to the contract sued upon.") (alteration in original) (quotation marks and citation omitted).

Here, too, the dispute does not implicate the terms of the Offer Letter. *See* Compl.; Offer Letter. And, as discussed above, the Merger Clause in the Offer Letter does not destroy the Arbitration Agreement. Therefore, any effect the Merger Clause may have on the admissibility of parol evidence regarding the Offer Letter's terms has no bearing on this dispute. *See Farrell v. Rd. Ready Used Cars, Inc.*, No. 17 Civ. 2030, 2018 WL 1936143, at *4 (D. Conn. Apr. 24, 2018) ("[T]he merger clause merely implemented the parol evidence rule for the [later-dated

10

contract]; it did not void the [earlier contract], which was a separate contract."); *see also Rosen v. Mega Bloks Inc.*, No. 06 Civ. 3474, 2007 WL 1958968, at *5 (S.D.N.Y. July 6, 2007) ("A merger clause protects parties against a claim that there exists some other writing or oral statement that forms part of the agreement. It cannot reasonably be construed to indicate how provisions within the various documents relate to each other." (internal citation omitted)), *report and recommendation adopted in part*, No. 06 Civ. 3474, 2008 WL 2810208 (S.D.N.Y. July 21, 2008).

The Offer Letter, therefore, does not supersede the Arbitration Agreement. Because Plaintiff does not dispute the validity of the Arbitration Agreement otherwise, the Court concludes that a binding agreement to arbitrate exists between the parties.

        C.      Scope of the Arbitration Agreement and Congressional Intent

Plaintiff does not dispute the other prongs of the test to determine if his claims is arbitrable, and so the Court disposes of them briefly. First, the Arbitration Agreement covers

> any pre-employment, employment or post-employment dispute, claim, or controversy . . . against [Horizon] . . . regarding any alleged unlawful act regarding [Plaintiff's] employment, [his] application for employment, the termination of [his] employment, or any allegation of harassment, which could have otherwise been brought before an appropriate court including, but not limited to . . . any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance; or any public policy, contract, tort or common law.

Arbitration Agreement at 1. As Plaintiff's claim arises from the termination of his employment, it falls under the Arbitration Agreement.

Second, Congress intended claims for retaliation under the False Claims Act to be arbitrable. *See, e.g.*, *Dhaliwal v. Mallinckrodt plc*, No. 18 Civ. 3146, 2019 WL 4739045, at *6 (S.D.N.Y. Sept. 29, 2019); *Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746, 756 (S.D. Ohio 2002); *see also Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000)

11

("[E]ven claims arising under a statute designed to further important social policies may be arbitrated . . . 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum[.]'" (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991))).

Therefore, Horizon's motion to compel arbitration is GRANTED.

II.     Motion to Stay

Where a court compels arbitration pursuant to a written agreement, both the FAA and New York law mandate that the action be stayed pending arbitration, if either party so requests. *See* 9 U.S.C. § 3; N.Y.C.P.L.R. § 7503(a); *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). As Horizon has requested a stay, Def. Mem. at 12–13, the action is STAYED pending arbitration.

## CONCLUSION

For the reasons stated above, Horizon's motion to compel arbitration is GRANTED, and the action is STAYED pending arbitration.

The parties are directed to submit a letter to the Court on **October 14, 2021**, and every thirty days thereafter, updating the Court has to the status of the arbitration proceeding.

SO ORDERED.

Dated: September 14, 2021
       New York, New York

_____
ANALISA TORRES
United States District Judge